IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| KENNETH GALEN GREENWALT, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-14-1177-STE |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Kenneth Greenwalt brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative proceedings.

I. **PROCEDURAL BACKGROUND**

Plaintiff's application for disability insurance benefits was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 22-28). The Appeals Council denied Plaintiff's request for

review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 31, 2010, the alleged disability onset date. (TR. 24). At step two, the ALJ determined that Plaintiff had severe impairments of coronary artery disease, status post coronary artery bypass graft, high blood pressure, obstructive sleep apnea, left knee arthritis, and obesity. (TR. 24). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 24).

At step four, the ALJ found Plaintiff had the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except lift and carry up to 10 pounds occasionally and less than 10 pounds frequently; sit up to 6 hours in an 8 hour workday with appropriate breaks; stand and/or walk 2 hours in an 8 hour workday; push/pull otherwise unlimited; no ladders, ropes or scaffolds; occasional ramps and stairs; occasional postural activities; no manipulative limitations; avoid concentrated exposure to heights, fumes, odors, gases, poor ventilation and exposure to extremes of temperature.

(TR. 25).

A vocational expert (VE) consulted the Dictionary of Occupational Titles (DOT) and testified regarding Mr. Greenwalt's past relevant work as a personnel manager and

education specialist. (TR. 57-62). The VE provided the DOT codes for each position and testified that they were both considered sedentary, skilled jobs, with a specific vocational preparation (SVP) level of 8. (TR. 60-61). The ALJ asked the VE if an individual with the RFC restrictions could perform Mr. Greenwalt's past work. (TR. 61). The VE replied affirmatively, but noted that the hypothetical individual could only do the work as described in the DOT, and not as Mr. Greenwalt had actually performed the jobs. (TR. 61). The ALJ adopted the testimony of the VE and concluded that Mr. Greenwalt was not disabled at step four based on his ability to perform his past relevant work. (TR. 28).

## III.   ISSUES PRESENTED

On appeal, Plaintiff alleges errors in all three phases of the ALJ's step four analysis. The Court concludes the ALJ erred in his evaluation of a treating physician's opinions which affected the RFC finding at phase one of step four. Remand for further analysis obviates the need for a discussion of Plaintiff's remaining allegations of error at phases two and three as they will likely be affected on remand.

## IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V. ERROR AT PHASE ONE STEP FOUR

At phase one of step four, the administrative law judge must evaluate the claimant's RFC. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). As alleged by Mr. Greenwalt, the ALJ erred at this phase by improperly evaluating the opinion of treating physician Dr. Prashant Phatek.

### A. ALJ's Duty in Evaluating a Treating Physician's Opinion

An ALJ must follow a two-pronged analysis in evaluating of a treating physician's opinion. First, the ALJ must determine whether a treating physician's opinion is entitled to "controlling weight." *Krausner v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). This deference must be given if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in the case record." *Id.*; Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 (July 2, 1996) (SSR 96-2p).

Second, if the ALJ declines to give the treating physician's opinion "controlling weight," the ALJ must examine particular factors and explain the amount of weight assigned. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship,

4

including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Krausner v. Astrue*, 638 F.3d at 1330, 20 C.F.R §§ 404.1527. Although the ALJ need not explicitly discuss each factor, the reasons stated must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); SSR 96-2p 1996 WL 374188, Westlaw op. at 5.

If the ALJ rejects the opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted). An ALJ may reject a physician's opinion outright only on the basis of contradictory medical evidence and not due to his own credibility judgment, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

### B. Dr. Phatek's Opinions

Dr. Phatek treated Mr. Greenwalt from July 2009 through January 2013. (TR. 377-473, 476-563, 581-669, 678-682). In February 2010, Dr. Phatek referred Mr. Greenwalt for an echocardiogram based on his diagnoses of coronary artery disease, atrial fibrillation, and congestive heart failure. (TR. 460-461). The results showed a mildly dilated left atrium, mildly thickened aortic valve leaflets, and physiological tricuspid regurgitation. (TR. 460-61). In August 2010, an x-ray of Plaintiff's left knee showed an enthesophyte, mild to moderate joint space narrowing, osteophytosis, and ossifications

present. (TR. 469). In December 2010, a chest x-ray showed mild cardiomegaly with mild pulmonary vascular congestion. (TR. 468).

In July 2011, Mr. Greenwalt reported that he had been experiencing shortness of breath which became worse on exertion, and that he could only walk one-quarter mile before resting. (TR. 456). In August 2011, Mr. Greenwalt was admitted to the hospital due to the shortness of breath, low blood pressure, dizziness, and vertigo. (TR. 439, 442, 445, 456, 514, 515, 535, 543). At that time, Mr. Greenwalt was referred for a walker because he needed assistance for walking over 50 feet. (TR. 413). Plaintiff initially resisted the walker, but he eventually agreed for safety purposes, and received the walker two months later. (TR. 412, 507). At the hearing, Plaintiff testified that he used the walker 4-5 times a week. (TR. 50).

On January 7, 2013, Dr. Phatek authored a "Physical Residual Functional Capacity Form" where he outlined his diagnoses and opinions regarding Mr. Greenwalt's specific work-related abilities. (TR. 678-82). Dr. Phatek stated that he had treated Plaintiff for: (1) coronary artery disease, (2) status post myocardial infarction and coronary artery bypass graft, (3) congestive heart failure, (4) atrial fibrillation, (5) diabetes mellitus, (6) hypertension, (7) obstructive sleep apnea, (8) degenerative disc disease in his left knee, and (9) edema with inactivity in both lower extremities. (TR. 678).

Dr. Phatek described Plaintiff's symptoms as: (1) labored breathing after walking 50 yards, (2) infrequent dizziness, (3) chronic fatigue, (4) back pain at an "8/10" with prolonged sitting over one hour, (5) limp with walking over 50 yards despite the use of

a walker and knee brace, and (6) edema in both lower extremities. (TR. 678). To treat the conditions, Dr. Phatek prescribed Lisinopril, Metoprolol, Rosuvastatin, Warfarin, and Furosemide. (TR. 679).

Regarding work-related functional limitations relevant to the appeal, Dr. Phatek stated that Plaintiff could: (1) only sit for 45 minutes, before breaking to walk for 5 minutes, (2) stand for only 15 minutes at a time, (3) sit and stand for only 2 hours total during an 8-hour workday, and (4) occasionally lift and/or carry less than 10 pounds. (TR. 680-681). The physician also stated that Plaintiff would need a job which allowed: (1) unscheduled breaks throughout the workday, (2) an "at will" sit-stand option, and (3) elevation of his legs for 25% of the day. (TR. 680-81). The physician also opined that Mr. Greenwalt's pain was so severe that it would frequently interfere with his attention and concentration, and that Plaintiff was moderately limited in his ability to deal with work stress. (TR. 679-680). Finally, Dr. Phatek stated that Plaintiff's impairments would likely cause him to miss work about twice a month. (TR. 682).

### C. Error in the Analysis of Dr. Phatek's Opinion

As stated, the ALJ's analysis of a treating physician's opinion is two-fold: whether the opinion is entitled to "controlling weight" and if not, what "lesser weight" the opinion should be given. *Krausner v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). Plaintiff does not does not challenge the ALJ's decision to decline "controlling weight" to Dr. Phatek's opinions. Thus, the issue is whether the ALJ properly accorded Dr. Phatek's opinions "lesser weight" and/or provided specific, legitimate reasons for rejecting any of the

physician's findings. The Court answers the question negatively and concludes that the ALJ's error warrants remand for further consideration of Dr. Phatek's opinions.

At issue are the limitations that Dr. Phatek set forth in his Physical RFC form. (TR. 678-682). In the decision, the ALJ acknowledged the form and gave the opinions "limited weight" stating:

> The opinions of Dr. Phatal [sic] are given limited weight because they lack objective support and instead appear to rely on the claimant's subjective complaints. The claimant's allegations, without clinical support for his subjective complaints, are insufficient to establish his impairments and limitations. The claimant testified that his doctor knows that he does not feel up to working so he does not recommend the claimant work. This statement along with opinions that are unsupported by objective findings, including limitations on sitting, establishes that the limitations opined are based upon the claimant's subjective complaints. Dr. Weingarten reviewed the opinions of Dr. Phatal [sic] and opined that the sitting restrictions are not supported by the claimant's examination findings. The claimant testified he is limited in his ability to sit because it causes pain in his low back. The claimant testified that he has been told to lose weight and MRIs and x-rays of his back have not been recommended. This lack of testing is inconsistent with the degree of pain and limitations the claimant attributes to his back and that Dr. Phatal [sic] asserts limits the claimant's ability to sit.

(TR. 27).

The ALJ's analysis was limited to a discussion of Dr. Phatek's limitations on Plaintiff's ability to sit. (TR. 27). He omitted any discussion, however, of Dr. Phatek's opinions regarding Mr. Greenwalt's standing and lifting limitations, as well as his difficulty with attention, concentration, and work stress, the need to elevate his legs, take unscheduled breaks, and change from sitting to standing at will. *Compare* TR. 27 *to* TR. 680-681.

### 1. Sitting Limitations

Mr. Greenwalt testified that when he sits for longer than 15-20 minutes, he experiences an increase in back pain. (TR. 47-48). This testimony correlates with Dr. Phatek's limitations on Plaintiff's ability to sit. (TR. 678, 680). Plaintiff confirmed that no back x-rays or MRIs had been ordered, but that doctors have advised him to lose weight. (TR. 47). The ALJ discounted the opinions because: (1) according to the ALJ, at the hearing, the medical expert stated that the sitting restrictions "[we]re not supported by the claimant's examination findings," (2) the ALJ believed that the allegations of pain were based solely on Mr. Greenwalt's subjective allegations and (3) a lack of MRIs or x-rays to support the allegations. None of the rationales are sufficient.

First, the ALJ stated that "Dr. Weingarten reviewed the opinions of Dr. Phatal [sic] and opined that the sitting restrictions are not supported by the claimant's examination findings at the hearing." (TR. 27). The ALJ may consider the opinion of a medical expert when considering a treating physician's opinion. 20 C.F.R. §404.1527(e). But in the instant case, the ALJ's decision completely misrepresented Dr. Weingarten's testimony. At the hearing, the following exchange occurred:

> ALJ: Fattoch [sic] indicated that he felt that, with everything, the claimant would be unable to sit more than two hours in an eight-hour day, and the Counsel wants to know if you felt that that was appropriate or reasonable.
>
> Dr. Weingarten: No. I don't know why he can't sit.
>
> Plaintiff's Attorney: I have no further questions for this doctor.

(TR. 46).

According to the transcript, the medical expert did not state that Dr. Phatek's opinions "are not supported by the claimant's examination findings." Instead, he simply stated that he did not know why the Plaintiff could not sit. The ALJ's misrepresentation of Dr. Weingarten's testimony undermines his first rationale for discounting Dr. Phatek's opinions.

The ALJ's second and third rationales also fail. According to the ALJ:

> The claimant testified that his doctor knows that he does not feel up to working so he does not recommend the claimant work. This statement along with opinions that are unsupported by objective findings, including limitations on sitting, establishes that the limitations opined are based upon the claimant's subjective complaints. . . . [and] [t]he claimant testified that he has been told to lose weight and MRIs and x-rays of his back have not been recommended. This lack of testing is inconsistent with the degree of pain and limitations the claimant attributes to his back and that Dr. Phatal [sic] asserts limits the claimant's ability to sit.

(TR. 27). The ALJ discounted the sitting limitations because he believed that the allegations of pain associated with prolonged sitting were: (1) based solely on Mr. Greenwalt's subjective allegations and (2) not corroborated by x-ray or MRI evidence.

The Tenth Circuit Court of Appeals rejected similar rationales in *Langley v. Barnhart*, 373 F.3d 1116 (10th Cir. 2004). In *Langley*, The ALJ stated that "[the treating physician's] assessment [wa]s clearly based upon the claimant's subjective complaints" and "his account of the claimant's limitations [was] more an act of courtesy to a patient, rather than a genuine medical assessment . . . ." *Langley v. Barnhart*, 373 F. 3d at 1120 (internal quotation marks and citations omitted). The Tenth Circuit disallowed the ALJ's rejection of the treating physician's opinion, stating:

10

> The ALJ also improperly rejected [the treating physician's] opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in [the treating physician's] reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*

*Id.* (internal quotation marks and citations omitted) (emphasis in original). *Langley v. Barnhart* is controlling.

First, Dr. Phatek never stated that his opinions were based solely on Plaintiff's subjective complaints or because Plaintiff had stated that he did not feel up to working. (TR. 678-82). In fact, the record is replete with over three years of Dr. Phatek's progress notes, various tests, and medications which would indicate otherwise. (TR. 377-473, 476-563, 581-669, 678-682).

Second, the absence of x-rays or MRIs is based upon the ALJ's own speculation that such tests were needed to corroborate Plaintiff's pain. But at the hearing, Plaintiff indicated that his obesity had caused the back pain with prolonged sitting and that in lieu of x-rays or MRIs, his doctors had advised him to lose weight. (TR. 47-48). The Social Security Administration has recognized obesity as a medically determinable impairment which can cause limitations in an individual's ability to sit. Social Security Ruling 02-1p, Titles II and XVI: Evaluation of Obesity, 2002 WL 34686281, Westlaw op. at 6 (Sept. 12, 2002) (SSR 02-1p). This ruling suggests that Plaintiff's back pain upon sitting could have been linked to his obesity, which would not have been objectively confirmed

through x-rays or MRIs. The Court is not stating that the link existed, only that the ALJ should not have speculated that objective tests were required to prove the allegations.

The ALJ provided three invalid reasons for discounting Dr. Phatek's limitations on Mr. Greenwalt's ability to sit. The absence of specific, legitimate reasons for discounting the opinions warrants remand.

### 2. Dr. Phatek's Remaining Limitations

In addition to Dr. Phatek's limitations on Plaintiff's ability to sit, the doctor also stated that Mr. Greenwalt could: (1) only stand for only 15 minutes at a time, for 2 hours total during an 8-hour workday and (2) occasionally lift and/or carry less than 10 pounds. (TR. 680-681). The physician also stated that Plaintiff would need a job which allowed: (1) unscheduled breaks, (2) an "at will" sit-stand option, and (3) elevation of his legs for 25% of the day. (TR. 681). The physician also opined that Mr. Greenwalt's pain was so severe that it would frequently interfere with his attention and concentration, and that Plaintiff was moderately limited in his ability to deal with work stress. (TR. 679-680). Finally, Dr. Phatek stated that Plaintiff's impairments would likely cause him to miss work about twice a month. (TR. 682).

The ALJ apparently rejected these opinions from Dr. Phatek as evidenced by the conflict in the RFC with the Plaintiff's ability to lift, carry and stand, and a complete omission of the remaining opinions. (TR. 25). The ALJ does not provide specific, legitimate reasons for rejecting the opinions, as he is required to do, and the legal error warrants remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

**VI.     ALLEGED ERRORS AT PHASES TWO AND THREE OF STEP FOUR**

Mr. Greenwalt also alleges errors at phases two and three of step four. But the Court declines discussion of these allegations as they will likely be affected on remand based upon the error at phase one. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.)

**ORDER**

The undersigned magistrate judge has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. The Court concludes that the ALJ did not follow the correct legal standards in considering Dr. Phatek's opinion, nor are the ALJ's reasons for completely rejecting his opinion supported by substantial evidence. Accordingly, the Court **REVERSES** the Commissioner's decision and **REMANDS** for further administrative development.

**ENTERED** on February 9, 2016.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE